KEYONE KING,

    Plaintiff,

    v.

LT. ELLIOTT,
WARDEN WALTER WEST,
JARMON,

    Defendants.

Civil Action No.:  RDB-20-2513

## MEMORANDUM OPINION

In response to this civil rights suit filed pursuant to 42 U.S.C. § 1983, Defendants filed a Motion for Summary Judgment asserting they are entitled to judgment in their favor because Plaintiff Keyone King raised no specific allegations against West and Jarmon; King failed to exhaust his administrative remedies; King's legal papers and religious texts were removed from his cell because of suspicion that they contained an illegal, controlled dangerous substance; and that they are entitled to immunity and qualified immunity defenses.  ECF 13.  King has opposed the motion.  ECF 17.  No hearing is required to address the pending matters.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons stated below, the complaint will be dismissed without prejudice for failure to exhaust administrative remedies and the remaining defenses raised by Defendants shall not be addressed.

## BACKGROUND

Plaintiff Keyone King is an inmate confined to Eastern Correctional Institution (ECI).  He alleges that on February 26, 2020, while he was confined to housing unit 4, A tier, in segregation, a correctional officer came into his cell on the orders of Lt. Elliott and confiscated all of his personal papers, legal material, and religious books.  ECF 1 at 2.  He states that he was never given

a confiscation form documenting what was taken from his cell. *Id.* King recalls being told that he would lose his right to study his religion (Islam) and his right to sent or receive materials to his lawyer or to outside media. *Id.* The stated rationale behind the confiscation, according to King, was smoking. *Id.*

On March 8, 2020, King was released from segregated confinement, but was never given back his legal paperwork, his personal pictures, or his religious papers. ECF 1 at 2. King states that he filed an administrative remedy procedure complaint ("ARP") on February 26, 2020, seeking return of his property, but the ARP was never answered. *Id.* He filed another ARP with the Commissioner of Correction on March 28, 2020, concerning the Warden's failure to address his first ARP, but he did not hear back from the Commissioner. *Id.* He also claims he appealed the failure to respond to the Inmate Grievance Office ("IGO") but never heard back from that either. *Id.* As relief, King seeks $5000 in compensatory damages for the loss of his right to practice his religion and his loss of legal work. *Id.* at 3.

Defendants admit that the property King states was taken from his cell was in fact confiscated during a search which was conducted because King was among the inmates who were suspected of smuggling "K2" into the prison. They explain that "K2 can be dried and sent secretly as a letter or sheet of paper." ECF 13-3 at 1, ¶ 3. There is no indication by Defendants that King was found to be in possession of the drug, nor do they explain how the impact on his right to practice his religion and his right of access to the courts were accommodated. Rather, Lt. Elliott simply states that he "directed officers to seize Mr. King's papers, books and other written documents as contraband" because of "concern that Mr. King could have secreted amounts of K2 in the pages of these documents." *Id.* at ¶ 5.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

The Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

## ANALYSIS

As noted, Defendants assert that King failed to properly exhaust his administrative remedies concerning the confiscation of his property and the failure to return it. Failure to exhaust administrative remedies is an affirmative defense and if King's claim was not properly presented

through the administrative remedy procedure it must be dismissed pursuant to the Prisoner

Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983
> of this title, or any other Federal law, by a prisoner confined in any jail, prison,
> or other correctional facility until such administrative remedies as are available
> are exhausted.

42 U.S.C. § 1997e(a). The phrase "prison conditions" encompasses "all inmate suits about prison

life, whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v.

Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his

administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50

F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is

now mandatory."). Exhaustion requires completion of "the administrative review process in

accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S.

81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies,

which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency

addresses the issues on the merits).'" *Woodford,* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*,

286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But the court is "obligated to ensure

that any defects in [administrative] exhaustion were not procured from the action or inaction of

prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba

v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

In Maryland, the administrative remedy procedure is codified in Md. Code Ann., Corr.

Servs ("C.S."), §§ 10-201 *et seq*. and Md. Code Regs. ("COMAR") 12.07.01.01 *et seq*.

Regulations promulgated by the Department of Public Safety and Correctional Services establish the procedures set forth below for exhausting administrative remedies.

For the first step, a prisoner is required to file his initial ARP with his facility's "managing official," COMAR 12.02.28.02(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(k) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Corrections. COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.[1] COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). When filing with the IGO, a prisoner is required to include copies of the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing." C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO,

---

[1] If the Commissioner fails to respond, the grievant shall file their appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't § 10-206(a)(1).

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* COMAR 12.07.01.10(B); C.S. § 10-209(b)(2)(c).

Defendants provide a copy of an ARP filed by King on February 26, 2020 concerning the confiscation of his property including legal and religious material. ECF 13-4. The Administrative Remedy Coordinator instructed King to rewrite the ARP and include the date, time, and shift supervisor on duty when the search took place. *Id.* at 1. King was given until March 12, 2020 to resubmit his ARP. *Id.*

King maintains he never received a response to his ARP and sent an ARP to the Commissioner[2] regarding the lack of response but heard nothing back from that attempt to resolve the matter. ECF 17 at 1. King then resubmitted his ARP to the Warden on July 22, 2020,[3] which was dismissed as untimely. *Id.*; *see also* ECF 17-1 at 2. King appealed the dismissal to the Commissioner where it was again dismissed as untimely. ECF 17-1 at 1.

---

[2]     King does not provide a copy of this appeal to the Commissioner.

[3]     This ARP is date-stamped as received on August 13, 2020.

Exhaustion of administrative remedies must be done in accordance with the applicable rules in place for the procedure. *See Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo*, 286 F.3d at 1024 (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

King waited approximately five months to re-file his ARP and does not explain that delay. Rather, he simply claims he never received a response to his initial ARP. King's belief that his ARP was not received by the institutional Administrative Remedy Coordinator does not explain why he did not refile the ARP sooner. Further, King was entitled to file an appeal of the Commissioner's failure to respond to the IGO, but he does not state he did so. King's failure to exhaust administrative remedies requires dismissal of the complaint without prejudice.

A separate Order granting Defendants' motion and dismissing the complaint without prejudice follows.


__7/1/2021____　　　　　　　　　　　　　　__　　/s/_____
Date　　　　　　　　　　　　　　　　　　　　　RICHARD D. BENNETT
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE